UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| MARK BURDEN, In His Capacity as Personal Representative of the Estate of and Next Friend of Danny Ray Burden, Deceased | Civil Action No. 05:14-CV-_____ |
| PLAINTIFF, | **COMPLANT** |
| V. | |
| GRANT COUNTY FISCAL COURT, GRANT COUNTY, KENTUCKY<br>    *Serve:*<br>        Grant County Attorney<br>        Joe Taylor<br>        101 N. Main Street, #6<br>        Williamstown, KY 41097 | |
| GRANT COUNTY DETENTION CENTER<br>    *Serve:*<br>        Grant County Attorney<br>        Joe Taylor<br>        101 N. Main Street, #6<br>        Williamstown, KY 41097 | |
| TERRY PEEPLES, Grant County Jailer, In His Individual and Official Capacity<br>    *Serve:*<br>        212 Barnes Road<br>        Williamstown, KY 41097 | |
| JESSICA DAWN JUMP, (Deputy #783), In Her Individual and Official Capacity<br>    *Serve:*<br>        212 Barnes Road<br>        Williamstown, KY 41097 | |
| LIAM McCARTHY, (Chief Warrant Officer #773), In His Individual and Official Capacity<br>    *Serve:*<br>        212 Barnes Road<br>        Williamstown, KY 41097 | |

| | |
|---|---|
| ROBERT HOWELL, | ) |
| In His Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| RICHARD CLISE, (Chief Deputy #776), | ) |
| In His Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| LISA MENTRUP, (Lieutenant), | ) |
| In Her Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| TONYA BEAGLE, (Captain of Operations #755), | ) |
| In Her Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| ERIC MORRIS, (Deputy #759), | ) |
| In His Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| TROY HALE, (Operations Lieutenant #716), | ) |
| In His Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| JASON A. HANKINS, (Chief Warrant Officer #760), | ) |
| In His Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| | ) |
| | ) |

ADAM WHITNEY, (Deputy #764),             )
In His Individual and Official Capacity  )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
FRED JERNIGAN, (Lieutenant #762),        )
In His Individual and Official Capacity  )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
MEGAN TEETERS, (Deputy #747),            )
In Her Individual and Official Capacity  )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
BARRY GREEN, (Deputy #705),              )
In His Individual and Official Capacity  )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
UNKNOWN EMPLOYEES OF                     )
GRANT COUNTY DETENTION CENTER,           )
In Their Individual and Official Capacities )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
FRANKLIN BARNES, (Trustee),              )
In His Individual and Official Capacity  )
    *Serve:*                          )
        212 Barnes Road             )
        Williamstown, KY 41097      )
                                         )
ADVANCED CORRECTIONAL                    )
HEALTHCARE, INC.,                        )
    *Serve via Kentucky Secretary of State:* )
        CT Corporation System        )
        306 W. Main Street          )
        Suite 512                   )
        Frankfort, KY 40601         )
                                         )
                                         )

3

| | |
|---|---|
| CELESTE KIEFNER, (Nurse), | ) |
| In Her Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| EDNA M. HARRISON, (Nurse), | ) |
| In Her Individual and Official Capacity | ) |
|     *Serve:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| UNKNOWN EMPLOYEES OF | ) |
| ADVANCED CORRECTIONAL | ) |
| HEALTHCARE, INC. | ) |
|     *Serve via Kentucky Secretary of State:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
| DR. NADIR AL-SHAMI, (Doctor), | ) |
| In His Individual and Official Capacity | ) |
|     *Serve via Kentucky Secretary of State:* | ) |
|         212 Barnes Road | ) |
|         Williamstown, KY 41097 | ) |
| | ) |
|         DEFENDANTS | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Comes Plaintiff, Mark Burden, personal representative of the Estate and next friend of Danny Ray Burden, Deceased, by counsel, and for his Complaint against the Defendants named herein, state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Mark Burden, is the personal representative of the Estate of Danny Ray Burden.

2. Defendants, Grant County Fiscal Court, Grant County, Kentucky and the Grant County Detention Center ("GCDC"), are governmental entities created pursuant to the Kentucky Constitution and Kentucky Revised Statutes, and said entities are, and at all times mentioned

4

herein were, responsible for the establishment of policies and procedures, either formally or by custom and practice, for the employment, training, supervision and conduct of the Grant County Jailer, Terry Peeples, and various officers, employees and medical professionals at the GCDC.

3. Defendant Terry Peeples is, and at all times mentioned herein was, the Grant County Jailer and, in such position, was responsible for the establishment of policies and procedures, either formally or by custom and practice, for the employment, training, supervision, and conduct of the various officers, employees and medical professionals at the GCDC.

4. Defendants Jessica Dawn Jump, Liam McCarthy, Robert Howell, Richard Clise, Lisa Mentrup, Tonya Beagle, Eric Morris, Troy Hale, Jason A. Hankins, Adam Whitney, Fred Jernigan, Megan Teeters, and Barry Green (collectively referred herein as "Employees of the GCDC") are, and at all times mentioned herein, were officers and employees of the Grant County and/or GCDC, all of whom observed, witnessed and otherwise participated in the acts, omissions, offenses, wrongs, torts, failures and/or conduct involving Danny Ray Burden ("Burden") as described herein.

5. Defendants Unknown Employees of Grant County Detention Center, are and at all times mentioned herein were officers and employees of the Grant County Government, Division of Community Corrections, Grant County Detention Center, who observed, witnessed, and otherwise participated in the acts, omissions, offenses, wrongs, torts, failures and/or conduct involving Danny Ray Burden as described herein.

6. Defendant, Advanced Correctional Healthcare, Inc., ("ACH"), is and at all times mentioned herein was, a foreign corporation that provided medical services and medical personnel to the Grant County Government, Division of Community Corrections, Grant County Detention Center with regard to the medical treatment of inmates at the GCDC, including Danny

5

Ray Burden, and employees and agents of ACH observed, witnessed, and otherwise participated in the acts, omissions, offenses, wrongs, torts, failures and/or conduct involving Danny Ray Burden as described herein.

7. Defendants Celeste Kiefner, Edna M. Harrison, Dr. Nadir Al-Shami, and the Unknown Employees of Advanced Correctional Healthcare, Inc. (collectively referred to herein as "Employees of ACH") are, and at all times mentioned herein were, employees of ACH who provided medical services and medical treatment to Danny Ray Burden and also observed, witnessed, and otherwise participated in the acts, omissions, offenses, wrongs, torts, failures and/or conduct involving Danny Ray Burden as described herein.

8. Defendant, Franklin Barnes, was and at all times mentioned herein was an inmate at GCDC, and was assigned as Trustee by the Employees of the GCDC.

9. As Trustee, Franklin Barnes observed, witnessed, and otherwise participated in the treatment of, restraint of and other conduct and behavior involving Danny Ray Burden as described herein.

10. Defendants, individually and in collusion and/or conspiracy with one another, engaged in the conduct described herein under color of the law of the Commonwealth of Kentucky and Grant County.

11. This action includes claims for violations of 42 U.S.C. § 1983, and as such, this Court has original jurisdiction because it involves a federal question, and arises under the United States Constitution or laws of the United States.

12. This action includes state law claims over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

13. Venue is proper because the acts, omissions, offenses, wrongs, torts, failures

and/or conduct described herein occurred in Grant County, Kentucky, which is in the jury division designated as Northern Division at Covington.

## RELEVANT FACTUAL BACKGROUND

14. The individual Defendants named herein knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the acts, omissions, offenses, wrongs, torts, failures and/or conduct described herein.

15. The acts, omissions, offenses, wrongs, torts, failures and/or conduct described herein resulted from the failure of the defendants Grant County Government, Grant County, Kentucky, GCDC, Jailer Terry Peeples, Employees of GCDC, Unknown Employees of Grant County Detention Center, ACH, Employees of ACH, and Unknown Employees of ACH, to employ qualified persons for positions of authority, and/or to properly and conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures, either formally or by custom and practice, and/or to properly and reasonably provide adequate detention and incarceration procedure and medical care and treatment to Danny Ray Burden as part of such detention and incarceration so as to protect the constitutional right of inmates like Danny Ray Burden.

16. On March 27, 2013 at 11:03 a.m. Danny Ray Burden was ordered by the Hon. Stephen L. Bates to a jail sentence, to be served at the GCDC.

17. Danny Ray Burden arrived at the GCDC on March 27, 2013 at 12:07 p.m. via transport from the Grant County Sheriff's Office.

18. Defendants could have refused to accept Danny Ray Burden as an inmate under the policies and procedures, rules and regulations promulgated and issued by Grant County and/or the GCDC, but, instead, Defendants accepted him as an inmate, and thus took custodial

care of him and assumed all risks and responsibilities associated with his medical conditions, medical monitoring, medical and other treatment, and his incarceration.

19. Upon arrival Danny Ray Burden was assessed by Nurse Kiefner was informed by Danny Ray Burden that he had been medically diagnosed as an insulin dependent diabetic and also suffered from Chronic Obstructive Pulmonary Disease ("COPD") and anxiety/panic attacks, all three of which had physician's prescribed medications for treatment/control, namely Lantus and regular insulin for diabetes, Albuterol for COPD, and Xanax and Percocet for anxiety/panic attacks.

20. At some point, after the initial assessment by Nurse Kiefner, but prior to 12:41 p.m., Danny Ray Burden was escorted to the GCDC medical office where Nurse Kiefner conducted a blood sugar test on Danny Ray Burden in which the test yielded a blood sugar level of 336 mg/dL.

21. At this point, Defendants knew or should have known, if they had been properly trained, supervised, equipped, etc., that Danny Ray Burden needed emergency medical attention or other reasonable medical treatment, evaluation, monitoring or care.

22. At or around this time Nurse Kiefner contacted Dr. Al-Shami, an employee of ACH, to discuss Danny Ray Burden's blood sugar level and to advise that GCDC did not have Lantis in stock.

23. Nurse Kiefner was ordered by Dr. Al-Shami to administer 70/30 insulin subcutaneously, 20 units in the morning and 15 units at night, but she did not provide any insulin to Danny Ray Burden as ordered by Dr. Al-Shami, and/or Dr. Al-Shami did not adequately direct Nurse Kiefner to immediately administer said insulin based on Danny Ray Burden's condition(s).

24. At approximately 12:41 p.m., Danny Ray Burden was seated at the booking bench at the GCDC and was provide some sort of food on a tray, the specific contents of which (and whether such contents were adequate to address his conditions(s)) are unknown.

25. At 12:45 p.m. Deputy Jump re-initiated the booking process for Danny Ray Burden into GCDC instead of providing any further medical treatment, and at approximately 12:51 p.m. Deputy Jump started asking Danny Ray Burden a series of questions as part of the booking process, and throughout this process Danny Ray Burden was increasingly lethargic to the point of nodding off and becoming incoherent and inconsistent with his answers.

26. Based on these factors, again, Defendants knew or should have known, if they had been properly trained, supervised, equipped, etc., that Danny Ray Burden needed emergency medical attention or other reasonable medical treatment, evaluation, monitoring or care.

27. By approximately 2:00 p.m., Danny Ray Burden was unable to remain alert and coherent for any extended period of time, and requested an insulin shot from Chief Warrant Officer McCarthy.

28. Despite this request, insulin was not provided to Danny Ray Burden, nor was other adequate, reasonable medical treatment, evaluation, monitoring or care provided by Defendants.

29. Shortly thereafter, Danny Ray Burden began coughing profusely, which triggered Deputy Jump to ask Danny Ray Burden if he needed emergency medical attention.

30. Danny Ray Burden expressed to Deputy Jump that he needed emergency medical attention and at that time also informed Deputy Jump that he suffered from panic attacks and claustrophobia.

31. Deputy Jump stopped the booking process and advised ACH and the Employees

of ACH that Danny Ray Burden had requested emergency medical attention.

32. Despite the request for emergency medical attention, Defendants failed and refused to provide or render emergency medical attention or other reasonable medical treatment, evaluation, monitoring or care.

33. At approximately 2:02 p.m., Nurse Kiefner arrived at the booking bench and found Danny Ray Burden coughing profusely.

34. Nurse Kiefner assessed Danny Ray Burden and reported that his blood oxygen level was 93%, his blood pressure was 131/84, and his heart rate was 82 beats per minute, and that he had 16 breaths per minute.

35. Despite these signs and all other indication that Danny Ray Burden needed medical care, attention and treatment, Nurse Kiefner cleared Danny Ray Burden and informed Deputy Jump that she could continue the booking process.

36. At approximately 2:14 p.m. the booking process was suspended as Danny Ray Burden was unable to stay awake and coherent in order to complete the process, and at this time Chief Warrant Officer McCarthy made the decision to place Danny Ray Burden in a cell on detox watch.

37. Deputy Whitney, at the request of Chief Warrant Officer McCarthy, assigned Franklin Barnes, a Trustee, to aid Deputy Whitney in observing Danny Ray Burden while in a cell on detox watch, thereby failing to provide adequate monitoring and/or evaluation, leaving a fellow inmate and a non-medical and insufficiently trained individual as the only observer.

38. Deputy Whitney and Deputy Morris then moved Danny Ray Burden from the booking bench to cell D-144 for detox watch, instead of keeping him in the presence of either a properly trained GCDC deputy or medical personnel.

39. At a later unknown time, Danny Ray Burden was relocated from cell D-144 to cell D-146, where he was not directly evaluated or supervised.

40. At approximately 3:08 p.m., the records reflect that Nurse Kiefner recorded that Danny Ray Burden should receive a diabetic diet, but it is not clear whether this record of this event was created after the events described below (and it is not clear whether this event actually occurred before the events described below).

41. At approximately 3:10 p.m. two Trustees, one being Franklin Barnes the other unknown, arrived at cell D-146 and discovered Danny Ray Burden to be unconscious.

42. They were unsuccessful in trying to wake him.

43. Deputy Morris was called to aid the Trustees in their attempt to awaken Danny Ray Burden.

44. Deputy Morris was also unsuccessful in his attempt to awaken Danny Ray Burden, but Deputy Morris noted that Danny Ray Burden appeared to still be breathing, although shallowly, and that he was still unresponsive.

45. Deputy Whitney then relieved Deputy Morris and continued to attempt to awaken Danny Ray Burden by knocking on the cell door, calling Danny Ray Burden's name, and once inside the cell, banging on the sink with his keys.

46. Chief Warrant Officer McCarthy, upon hearing the noise coming from Danny Ray Burden's cell, joined Deputy Whitney and attempted to awaken Danny Ray Burden.

47. These attempts were also unsuccessful.

48. Corporal Howell was notified that Danny Ray Burden was unresponsive and called for medical assistance from the GCDC medical staff on duty.

49. Nurse Edna, the first GCDC medical staff to arrive, attempted to use smelling

salts to awaken Danny Ray Burden, with no success.

50. Nurse Kiefner was the second GCDC medical staff to arrive at Danny Ray Burden's cell and proceeded to aid Nurse Edna in trying to awaken Danny Ray Burden.

51. Defendants' failure to adequately evaluate and/or monitor, and the steps taken by Defendants once they discovered that Danny Ray Burden was unconscious, were unreasonably slow and caused undue and unnecessary delay in the provision of medical care and/or treatment to Danny Ray Burden, which resulted in his death as described below.

52. A Code Blue was called at approximately 3:13 p.m.

53. Shortly thereafter, Nurse Celeste, correctional officers and other employees of the GCDC and ACH began resuscitation efforts all of which were unsuccessful.

54. At 3:15 p.m. KSP E-911 Post 6 was contacted by Lieutenant Jernigan.

55. Williamstown Volunteer Fire Department was the first to arrive at the GCDC with Dry Ridge EMS arriving shortly thereafter at 3:20 p.m.

56. Upon arrival, Dry Ridge EMS found Danny Ray Burden in an asystole rhythm.

57. Said medical personnel continued lifesaving measures on Danny Ray Burden and after a couple of minutes of CPR medical personnel found sinus tachycardia symptoms.

58. Said medical personnel then transported Danny Ray Burden to St. Elizabeth Edgewood Short Term Hospital Care.

59. Upon arrival at the St. Elizabeth Edgewood Short Term Hospital Care at 3:46 p.m., Danny Ray Burden was admitted for altered mental status and cardiac arrest.

60. Defendants were subsequent contacted by Danny Ray Burden's mother, and Defendants informed her that he had been transported to the St. Elizabeth Edgewood Short Term Hospital.

61. They directed her to come to the GCDC before going to that hospital because she had to come to the GCDC to sign a release "bond" before going to the hospital to see her son, who was dying or dead (although they neglected to inform his mother of that fact).

62. In fact, she was not required by any law or otherwise to sign such a release "bond" in order to see her son at the hospital.

63. Upon information and belief, Defendants did this in order to pass the costs and expenses of any of Danny Ray Burden's medical care by St. Elizabeth Edgewood Short Term Hospital and/or the responding EMTs to persons or entities other than the Defendants.

64. As a result of Defendants' conduct in this regard, his mother came to the GCDC to sign the release "bond" first, and, by taking the time to divert her travels to the GCDC to sign the "bond, she never saw her son conscious or alive again.

65. Danny Ray Burden was discharged from St. Elizabeth Edgewood Short Term Hospital Care on March 27, 2013 at 5:53 p.m. and admitted to St. Elizabeth Edgewood.

66. Danny Ray Burden was later released from St. Elizabeth Edgewood on 04/03/13 at 3:01 p.m. and admitted to Edgewood Hospice/Medical Facility.

67. Danny Ray Burden was pronounced dead on April 4, 2013 at 1:50 p.m.

68. During the time that Danny Ray Burden was suffering from the abnormal blood sugar levels, COPD, and anxiety/panic attack(s) as described herein, Defendants participated in various ways and manners in the aforesaid acts, omissions, offenses, wrongs, torts, failures, and/or conduct, by ignoring Danny Ray Burden's medical conditions, symptoms, and requests for medication and/or medical assistance, and otherwise engaging in various aggressive and unwarranted activities, conduct and behavior against Danny Ray Burden, which conduct resulted in serious physical injury to and the death of Danny Ray Burden.

## COUNT I – VIOLATION OF CIVIL RIGHTS

69. Plaintiff adopts and incorporates by reference each and every of the foregoing allegations.

70. The conduct of the Defendants was intentional, reckless, deliberate, grossly negligent, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Danny Ray Burden's life as well as his constitutional and other federal, state and local laws, rules and regulations, and the risk of harm and death to him occasioned by such conduct.

71. The treatment of and conduct toward Danny Ray Burden by the Defendants was the result of customs and practices of the Defendants that were contrary to and expressly violated federal, state and local laws, rules and regulations, and that such customs and practices were the cause of Danny Ray Burden's death.

72. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard and indifference to the lives and federal and state constitutional and common law rights of inmates at the GCDC, including Danny Ray Burden, and the violation of those rights were likely to result from the regular and systematic pursuit of such practices.

73. As a result, Danny Ray Burden, was subjected to cruel and unusual punishment, deprived of his life, and denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, The Civil Rights Act of 1871, 42 U.S.C. § 1983, and other federal, state and local laws, rules and regulations, all in an amount which exceeds the jurisdictional requirements of this Court.

74. The conduct of the Defendants was willful and violated federal, state and local

laws, rules and regulations, such that the Plaintiff is also entitled to punitive damages.

## COUNT II – NEGLIGENCE

75. Plaintiff adopts and incorporates by reference each and every of the foregoing allegations.

76. The Defendants had a duty to exercise reasonable care in the in the transportation, detention, and incarceration of Danny Ray Burden, and the duty to exercise reasonable care to treat any medical condition suffered by Danny Ray Burden.

77. The Defendants breached their duty of care in the transportation, detention, incarceration and medical treatment of Danny Ray Burden.

78. As a direct and proximate result of the breach of such duty of care by the Defendants, Danny Ray Burden suffered physical injury and death all in an amount which exceeds the jurisdictional requirements of this Court.

79. The conduct of the Defendants was willful and violated federal, state and local laws, rules and regulations, such that the Plaintiff is also entitled to punitive damages.

80. Further, Defendants Grant County, GCDC and Jailer Terry Peeples failed to properly maintain and/or have adequate and/or functioning surveillance (video and audio) equipment in the GCDC, and the lack of properly maintain and/or have adequate and/or functioning surveillance equipment resulted or contributed to Danny Ray Burden suffering physical injury and death, and/or resulted in the spoliation or destruction of evidence regarding the facts and causes of action set forth herein.

## COUNT III – INFLICTION OF EMOTIONAL DISTRESS

81. Plaintiff adopts and incorporates by reference each and every of the foregoing allegations.

15

82. The conduct of the Defendants grossly negligent and/or intentionally inflicted physical injury and emotional distress upon Danny Ray Burden.

83. As a direct and proximate result of the grossly negligent and/or intentional infliction of physical injury and emotional distress upon Danny Ray Burden by the Defendants, Danny Ray Burden suffered bodily injury and death all in an amount which exceeds the jurisdictional requirements of this Court.

84. The conduct of the Defendants was willful and violated federal, state and local laws, rules and regulations, such that the Plaintiff is also entitled to punitive damages.

## COUNT IV - WRONGFUL DEATH

85. Plaintiff adopts and incorporates by reference each and every of the foregoing allegations.

86. As a direct and proximate result of the aforesaid negligence, gross negligence, intentional infliction of physical injury and emotional distress, and such other unlawful conduct of the defendants and the resulting death of Danny Ray Burden, the estate of Danny Ray Burden has suffered loss and damages in the form of funeral and burial expenses and loss of the earnings and income that Danny Ray Burden would have earned over the remainder of his anticipated life and his estate is entitled to recover compensatory, actual and punitive damages pursuant to KRS 411.130.

87. Defendants conduct was intentional and grossly negligent, indicated active malice toward Danny Ray Burden and constituted a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the compensatory damages that his estate is entitled to recover.

88. The conduct of the Defendants was willful and violated federal, state and local

16

laws, rules and regulations, such that the Plaintiff is also entitled to punitive damages.

## COUNT V - CONSPIRACY

89. Plaintiff adopts and incorporates by reference each and every of the foregoing allegations.

90. Defendants acted in concert and in conspiracy with one another with respect to each and every of the foregoing claims and causes of action.

91. As a result of the conduct of the Defendants in this regard, Plaintiff is also entitled to damages in an amount which exceeds the jurisdictional requirements of this Court.

WHEREFORE, the Plaintiff seeks judgment against the Defendants, jointly and severally, as follows:

1. Judgment for compensatory damages;

2. Judgment for punitive damages;

3. Trial by jury on all issues so triable;

4. For Plaintiff's costs and expenses incurred herein, including without limitation, attorney's fees as permitted by law, including without limitation, by 42 U.S.C. § 1983; and

5. Judgment for such other necessary and proper relief to which the Plaintiff is entitled.

Respectfully submitted,

*John N. Billings*
John N. Billings, Esq.
Gary W. Thompson, Esq.
Billings Law Firm, PLLC
111 Church Street, Suite 200
Lexington, Kentucky 40507
Telephone:   (859) 225-5240
Facsimile:   (859) 225-5241
nbillings@blfky.com
gthompson@blfky.com